UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MOBILE SHELTER SYSTEMS USA,
INC.,

        Plaintiff,

v.                                 CASE NO. 3:10-cv-978-J-37JBT

GRATE PALLET SOLUTIONS, LLC,
and THOMAS R. BUCK,

        Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court *sua sponte*. On September 28, 2011, the

Court entered an Order requiring Plaintiff, Plaintiff's Counsel ("Counsel"), and

Plaintiff's Counsel's Law Firm ("Law Firm") (collectively the "Sanction Parties") to

show cause why the Court should not sanction them, pursuant to Federal Rule of

Civil Procedure 11, Title 28 U.S.C. § 1927, and/or the Court's inherent power, for the

filing of a frivolous patent infringement claim ("the Order") (Doc. 71). In addition, the

matter was referred to the undersigned for the preparation of a Report and

Recommendation regarding sanctions. (*Id.*) The Sanction Parties filed a collective

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." FED. R. CIV. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

1

response to the Order. (Doc. 77.) For the reasons stated herein, the undersigned recommends that no sanctions be issued against any of the Sanction Parties.

In short, the undersigned cannot conclude that the various standards for sanctions, which are discussed in detail below, have been met. While Plaintiff, and certainly Counsel, could have been more careful and diligent in their prosecution of this case, each of the applicable standards for sanctions requires more egregious behavior than, in the undersigned's view, is present here. However, a court could reasonably conclude that sanctions are appropriate, particularly against Counsel and Law Firm pursuant to Section 1927. If such sanctions are imposed, the Court would need to conduct further proceedings to determine "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Court might also wish to give the parties an opportunity to agree on an appropriate amount.

## I.     Background

The Court will recount the history of these proceedings in some detail because they show the circumstances leading up to entry of the Order.

Plaintiff initiated this action by filing an initial Complaint and a Motion for Injunctive Relief on October 21, 2010. (Docs. 1 & 2.) Both documents were subsequently stricken because they failed to comply with the Local Rules of the U.S. District Court for the Middle District of Florida and because they failed to meet basic pleading standards. (Doc. 5.) Following a status conference to address Plaintiff's

*ex parte* motion for injunctive relief, Plaintiff filed an Amended Complaint and an Amended Motion for Injunctive Relief on October 26, 2010. (Docs. 6-8.) Although Plaintiff argued in the Amended Motion for Injunctive Relief that Defendants' alleged patent and trade dress infringements would cause irreparable harm (Doc. 8 at 12-13), Plaintiff failed to present any facts supporting such infringements. (*See* Doc. 11 at 7-8.) Furthermore, Plaintiff's Amended Complaint failed to contain any averments related to a patent infringement claim. (Doc. 7.)

The original Case Management Schedule issued by the Court set June 10, 2011, as the deadline to move to add parties or to amend pleadings, June 30, 2011, as the deadline for the disclosure of experts, and September 9, 2011, as the deadline for discovery. (Doc. 32.) One month prior to the deadline to move to add parties and amend pleadings, Plaintiff filed a Motion to Compel which asserted, for the first time, that its products were "protected by United States Patent No. 6,164,476, which issued December 26, 2000." (Doc. 36 at 2.) After the deadline to move to amend pleadings and add parties was extended through July 29, 2011, Plaintiff moved for and was granted leave to file its Second Amended Complaint. (*See* Docs. 40-42.) The Second Amended Complaint failed to contain any averments related to Defendants' alleged patent infringement other than another conclusory assertion that Plaintiff's products were "protected by United States Patent No. 6,164,476." (Doc. 43 at ¶ 10.)

Although the expert disclosure deadline was originally June 30, 2011, Plaintiff

apparently did not retain an expert until June 15, 2011.  (Doc. 77 at 6.)  Three days

prior to this deadline for disclosure of expert reports, the parties moved to extend

that deadline.  (Doc. 44.)  The motion was granted, extending Plaintiff's deadline for

expert disclosures until August 1, 2011, and Defendants' deadline for expert

disclosures until September 1, 2011.  (Doc. 45.)  On July 29, 2011, the last day of

the extended deadline to amend pleadings, Plaintiff moved to amend its Complaint

to add the subject patent infringement claim.  (Doc. 47.)  This was Plaintiff's first

attempt to allege such a claim, despite having acknowledged, and thus being aware

of, the possibility of such a claim nine months earlier.  (*See* Doc. 8 at 12-13.)

Plaintiff asserted that the amendment was necessary following its expert's inspection

of both Plaintiff's and Defendants' products.  (Doc. 47 at 2.)  Plaintiff's motion to

amend was granted on August 19, 2011, and the  discovery deadline was also

extended until September 30, 2011.  (Doc. 51.)[2]

Defendants then moved to continue the trial and to reset nearly all of the case

management deadlines due to Plaintiff's last-minute assertion of a patent

infringement claim.  (Doc. 54.)  The Court set the motion for hearing and also

instructed the parties to brief the issue of subject matter jurisdiction over the patent

claim.  (Doc. 60.) Defendants' jurisdictional brief, among other things, asserted that

the patent that was the basis for the claim was null and void, as it had been

---

[2] The Court was more than generous in allowing deadline extensions so that, despite inconvenience to the Court and Defendants, all arguable claims could be heard and resolved in this suit.

voluntarily surrendered to the U.S. Patent and Trademark Office ("USPTO") during a reissue proceeding prior to the commencement of the current action. (Doc. 63 at 10-13.)

Rather than respond to Defendants' assertion, Plaintiff again moved to amend its complaint to remove the patent infringement claim, citing "reconsideration of its trial strategy." (Doc. 65 at 2.) Plaintiff's proposed Fourth Amended Complaint, therefore, was nearly identical to its Second Amended Complaint. (*Compare* Doc. 65 *with* Doc. 43.) Over twenty docket entries accrued between the time Plaintiff moved to amend its complaint to include the patent infringement claim and the time the Court denied Plaintiff's motion to amend its complaint to drop the patent infringement claim. Counsel conceded at the hearing on Defendants' Motion to Continue that "there was some mistake on our part. We did think the '476 [patent] was still in force"; however, Counsel later stated, "I think it was more of a typo than anything. The claims as identified by Dr. Benedict still exist in the reissued claim." (Doc. 72 at 5.) As reflected by the Order and this Report, the Court considers this matter much more than just "a typo."

As stated in the Order, despite the complexities of patent law, the law is abundantly clear that an original patent is void and unenforceable after it is surrendered in a reissue proceeding. *See Eby v. King*, 158 U.S. 366 (1895); *Reedy v. Scott*, 90 U.S. 352 (1874); *Moffitt v. Garr*, 66 U.S. 273 (1861); *Seattle Box Co. v. Ill. Moulding Co.*, 128 F. 48 (C.C.N.D. Ill. N. Div. 1904); *Pfizer, Inc. v. Apotex, Inc.*,

731 F. Supp. 2d 741 (N.D. Ill. 2010); *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 2010 WL 2136494 (M.D. Fla. May 27, 2010).  It is equally clear that "[t]he surrender of the original patent shall take effect upon the issue of the reissued patent."  35 U.S.C. § 252; *see also Pfizer*, 731 F. Supp. 2d at 746 ("[T]he surrender of the original patent takes effect when the reissue patent is granted, and after reissue, the original patent is no longer enforceable.").  Given the combination of such clarity in the law, the dilatory and almost certainly negligent conduct of one or more of the Sanction Parties, and the less than forthcoming explanation presented by Counsel regarding the filing of Plaintiff's patent infringement claim at the hearing on Defendants' Motion to Continue, the Court found it necessary to issue the Order, and refer this matter to the undersigned to recommend whether sanctions should be issued against any of the Sanction Parties.

## II.  Standard

### A.    Rule 11

The Court first will set forth the general Rule 11 standard.  However, a higher standard applies in the case of court-initiated sanction proceedings, and that standard will be explained as well.

The general purpose of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers."  *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001).  In general, sanctions may be imposed:

(1) when a party files a pleading that has no reasonable factual basis;

(2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Id.* at 1301 (citations omitted).

A "court may impose an appropriate sanction on an attorney, law firm, or party that violated the rule or is responsible for the violation," and "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." FED. R. CIV. P. 11(c)(1).

In general, an objective standard is used in determining whether sanctions are appropriate under Rule 11; that is, courts must determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified. *Kaplan v. Daimlerchrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (citing *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002)).

In considering a motion for sanctions pursuant to Rule 11, a court generally conducts a two-step inquiry: (1) Whether the party's claims are objectively frivolous in view of the facts or law; and (2) whether the person who signed the pleadings should have been aware that they were frivolous, in other words, whether he would have been aware had he made a reasonable inquiry.

*Hodge v. Orlando Util. Comm'n*, 2010 WL 376019, *3 (M.D. Fla. Jan. 25, 2010).

Furthermore, a court may sanction a party who is neither an attorney nor the signor of the pleadings if the party makes factual misrepresentations in the pleadings or is the "mastermind" behind the frivolous case. *See Barash v. Kates*, 585 F. Supp.

2d 1347, 1363 (S.D. Fla. 2006) (citing *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001)).

When a court initiates sanction proceedings *sua sponte*, as in this case, there is no 21-day "safe harbor" wherein the offending party may correct or withdraw the challenged submission, as provided in Rule 11(c)(2). *See Kaplan*, 331 F.3d at 1255. For this reason, "the initiating court must employ (1) a 'show-cause' order to provide notice and an opportunity to be heard; and (2) a higher standard ('akin to contempt') than in the case of party-initiated sanctions." *Id.*

Thus, a court should not impose sanctions *sua sponte* unless an offender's conduct is "'akin to contempt' or taken in subjective bad faith." *See Hodge*, 2010 WL 376019 at *5. "Mere negligence or ignorance of the facts or law, without more, is not sufficient." *Id.* (citing *Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998)). "On the other hand, making a knowingly false statement or exhibiting deliberate indifference to obvious facts is akin to contempt and warrants *sua sponte* Rule 11 sanctions." *Id.* (citing *Riccard*, 307 F.3d at 1294; *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1329-30 (S.D. Fla. 2007)).

## B.    28 U.S.C. § 1927

Section 1927, which applies only to attorneys or persons admitted to conduct cases in a court of law, provides that any attorney who "multiplies the proceedings in any case unreasonably and vexatiously" may be liable for the excess expenses,

costs, and attorneys' fees reasonably incurred as a result of such conduct. *See* 28 U.S.C. § 1927; *Barash*, 585 F. Supp. 2d at 1363 (explaining that sanctions under the statute may be levied against attorneys, but not against their clients). Three conditions must be met in order to impose sanctions under the statute:

> First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.,* the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

*Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252 (11th Cir. 2007) (quoting *Peterson v. BMI Refractories*, 124 F. 3d 1386, 1396 (11th Cir. 1997)).

In order to meet the first condition, a Court must find that "the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong & Amlong, P.A.*, v. *Denny's Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007). "[N]egligent conduct, standing alone, will not support a finding of bad faith under § 1927." *Id.* at 1241-42. Rather, "[f]or sanctions under section 1927 to be appropriate, something more than a lack of merit is required." *Id.* at 1242. In order for sanctions to be warranted under the statute, "the attorney must *knowingly* or *recklessly* pursue a frivolous claim." *See Bettis v. Toys "R" Us*, 2009 WL 5206192, at *6 (S.D. Fla. Dec. 30, 2009) (quoting *Amlong & Amlong*, 500 F.3d at 1242) (emphasis in original).

While "tantamount to bad faith" is the standard that must be satisfied in order to impose sanctions under § 1927, it is the attorney's objective conduct rather than subjective intent that controls the inquiry. *See Bettis*, 2009 WL 5206192 at *7. "The

crux of the finding is, 'whether, regardless of the attorney's subjective intentions, the conduct was unreasonable and vexatious when measured against an objective standard.'" *Id.* (quoting *Hudson*, 499 F.3d at 1262). An attorney's subjective state of mind, however, should not be completely ignored because an attorney's actions are more likely to be found to be unreasonable and vexatious if they are done with a malicious purpose or intent. *See Amlong & Amlong*, 500 F.3d at 1241. Put another way, the question is whether Counsel's "conduct sunk so far beneath a reasonable standard of competence, much deeper than mere negligence, that it became essentially indistinguishable from bad faith." *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1178 (11th Cir. 2005).

### C. Court's Inherent Power

In addition to the sanctions available under Rule 11 and § 1927, courts have inherent power to regulate proceedings before them, including the conduct of attorneys. *See Bettis*, 2009 WL 5206192 at *7. In the Eleventh Circuit, a district court's authority to issue sanctions under its inherent authority is no broader than its authority to issue sanctions pursuant to § 1927. *See id.* (citing *Amlong & Amlong*, 500 F.3d at 1239; *Cordoba*, 419 F.3d at 1178 n.6). Some case law in the Eleventh Circuit suggests that a higher burden must be met before a court may impose sanctions pursuant to its inherent authority as opposed to § 1927. *See Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (noting "[t]he key to unlocking a court's inherent power is a finding of bad faith"); *Bettis*, 2009 WL 5206192 at *7.

At least one court has concluded that "a careful reading of the Eleventh's Circuit's opinions in these areas supports the understanding that sanctions may only be imposed under the Court's inherent power for conduct that is taken in subjective bad faith." *Bettis*, 2009 WL 5206192 at *8 (citing *Kaplan*, 331 F.3d at 1256; *Amlong & Amlong*, 500 F.3d at 1242). Furthermore, sanctions may be imposed against a party when the court finds that the party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or when a court finds that a "fraud has been practiced upon it, or that the very temple of justice has been defiled." *Barash*, 585 F. Supp. 2d at 1364 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)).

### D. Summary of Sanction Standards

#### 1. Against Plaintiff

Plaintiff may be sanctioned under Rule 11 if: (1) Plaintiff was an offending party; that is, Plaintiff made factual misrepresentations in the pleadings or was the "mastermind" of the frivolous claim, and (2) Plaintiff's conduct was taken in subjective bad faith or was "akin to contempt"; that is, Plaintiff knowingly made false statements or exhibited deliberate indifference to obvious facts. *See McDonald v. Emory Healthcare Eye Ctr.*, 391 F. App'x 851, 853 (11th Cir. 2010); *Barash*, 585 F. Supp. 2d at 1363; *Hodge*, 2010 WL 376019 at *4. Plaintiff may also be sanctioned under the Court's inherent power if Plaintiff acted in bad faith, vexatiously, wantonly, fraudulently, for oppressive reasons, or has otherwise defiled the "very temple of justice." *See Barash*, 585 F. Supp. 2d at 1364. Plaintiff may not be sanctioned

under § 1927.  *See id.* at 1363.

### 2. Against Counsel

Counsel may be sanctioned under Rule 11 if his conduct was taken in subjective bad faith or was "akin to contempt"; that is, he knowingly made false statements or exhibited deliberate indifference to obvious facts.  *See Hodge*, 2010 WL 376019 at *4.  He may also be sanctioned under § 1927 if his conduct was "tantamount to bad faith"; that is, he knowingly or recklessly pursued a frivolous claim.  *See Amlong & Amlong*, 500 F.3d at 1239; *Bettis*, 2009 WL 5206192 at *6. Finally, Counsel may be sanctioned under the Court's inherent power if he acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  *Barash*, 585 F. Supp. 2d at 1362.  In general, bad faith may be shown by acting fraudulently or defiling the "very temple of justice," by delaying or disrupting the litigation, or hampering enforcement of a court order, by knowingly or recklessly raising a frivolous argument, or by arguing a meritorious claim for the purpose of harassing an opponent.  *Id.*

### 3. Against Law Firm

Absent exceptional circumstances, Law Firm must be held jointly responsible if Counsel is sanctioned pursuant to Rule 11.  FED. R. CIV. P. 11(c)(1).  Law Firm may also be sanctioned under § 1927 if the firm acted in bad faith; that is, its conduct was vexatious and multiplied the proceedings.  *See Smith v. Grand Bank & Trust of Fla.*, 193 F. App'x 833, 838-39 (11th Cir. 2006) (explaining that sanctions under the statute may be levied against law firms, but not where only one attorney from the

12

firm, who was fired during the litigation, worked on the case). Finally, Law Firm may be held jointly and severally liable for any sanctions issued against Counsel pursuant to the Court's inherent power. *See Maale v. Kirchgessner*, 2011 WL 1458147, at *4 (S.D. Fla. Apr. 15, 2011).

## III.    Sanction Parties' Response

On October 10, 2011, the Sanction Parties filed a collective response to the Court's Order to Show Cause, wherein they set forth the following facts.[3] (Doc. 77.)

On December 26, 2000, United States Patent No. 6,164,476 ("the '476 patent") was issued to Svein Rene, then owner of Mobile Shelter Systems USA, Inc. ("Plaintiff" or "Mobile Shelter"), and Christoffer Worsoe. (Doc. 77 at 21-27.) On October 17, 2002, Rene and Worsoe submitted a reissue application for the '476 patent in accordance with 35 U.S.C. § 251, requesting an amendment to their claims. (Doc. 77 at 28-58.)

Mobile Shelter and ITN/Grate Pallet, Inc. ("Grate Pallet") executed a settlement agreement in May of 2004 settling a civil action filed with this Court on November 25, 2003. (Doc. 52 at 22-55.) The settlement agreement provided, in part, that Mobile Shelter would not pursue its patent infringement claim based on the '476 patent and that Grate Pallet would refrain from producing, marketing, and

---

[3] The Sanction Parties filed exhibits and affidavits in support of the facts set forth in their collective response. (Doc. 77 at 21-83.) For purposes of this Recommendation, the Court largely accepts as credible the facts as set forth by the Sanction Parties, but may not agree with certain characterizations of those facts.

selling products similar to the STF line of products produced by Mobile Shelter. (*See id.*)  The agreement made no mention of a reissue patent or application. (*See id.*)

On January 6, 2005, Defendant Grate Pallet Solutions, LLC ("Grate Pallet Solutions") was formed by Defendant Thomas R. Buck, a former shareholder of Grate Pallet. (Doc. 77 at 3-4.)  Grate Pallet was subsequently dissolved in September of 2005. (*Id.*)  In 2006, Mobile Shelter underwent a corporate changeover and Ralph Kluna, the current Chief Operating Officer ("COO"), joined the company. (*Id.* at 81-83.)  Kluna was aware that the STF product line was protected by a patent and that the products were all marked with the '476 patent number. (*Id.*)  Kluna was also aware of the previous lawsuit between Mobile Shelter and Grate Pallet. (*Id.*)

In September of 2006, Rene was forced out as owner of Mobile Shelter and was replaced by the major creditor, Per Eivind Skeid. (*Id.*)  At the time of Rene's departure, the reissue application was still pending but, to the best of Plaintiff's knowledge, Rene had not informed Kluna or anyone else within the company of the pending application. (*Id.*)  Because Rene's departure was not amicable, there was a lack of communication between the incoming and outgoing owners. (*Id.*)  At the time of Rene's departure, Mobile Shelter was still marking its STF products with the '476 patent number. (*Id.*)  Shortly after Rene's departure, on December 26, 2006, the USPTO approved the reissue application and issued a new patent, United States Patent No. RE39,444 ("the reissue patent"). (*Id.* at 59-66.)  It appears that a copy

of this patent was at least received by the company, or an affiliate thereof, in Norway.  (*Id.* at 5.)

In January of 2007, Kluna took over as COO, believing that the '476 patent was valid.  (*Id.* at 81-83.)  Sometime thereafter, Kluna requested and received Mobile Shelter's patent paperwork from his Norwegian counterparts, who kept copies of all company records, which included the '476 patent and the reissue patent in the same document.  (*Id.*)  As Kluna testified in his affidavit:

> As I am not an expert on patents, I did not understand the legal significance  of the reissue and that it superseded the '476 original patent.  I was under the mistaken impression the reissue was merely an amendment to the '476 [p]atent, and had no legal significance apart from the original patent.  I honestly thought nothing of it.

(*Id.* at 83.)

Because Kluna was unaware that the reissue patent superseded the '476 patent, he never informed his attorneys of the existence of the reissue patent.  (*Id.* at 82-83.)  The only patent presented to his attorneys was the '476 patent.  (*Id.* at 72-73, 77-78.)  Moreover, Kluna did not learn of the significance of the reissue patent until his attorneys informed him of such at a much later date.  (*Id.* at 82-83.)

In October of 2010, upon learning that Grate Pallet Solutions had begun marketing products allegedly similar to the STF line of products in alleged violation of the settlement agreement, Plaintiff initiated this lawsuit, alleging causes of action for fraud, trade dress infringement, tortious interference with existing and prospective contractual relations, and breach of contract.  (Doc. 1; Doc. 7.)  On June 15, 2011,

Plaintiff retained Dr. Charles E. Benedict as an expert witness to review both Plaintiff's and Defendants' products and to opine as to the trade dress claim and any potential patent infringement claims.[4] (Doc. 77 at 6.)

Prior to Plaintiff filing its patent infringement claim, Dr. Benedict opined, after inspecting the products of both companies, that Plaintiff had a credible patent infringement claim on the basis of literal infringement and the doctrine of equivalents. (*Id.* at 67-70.) Further, Counsel, who is not a patent lawyer, conferred informally with registered patent attorney Michael Blake, who had worked with Plaintiff in the past, regarding the potential infringement claim. (*Id.* at 73, 78.) Counsel discussed with Blake the basic interpretation of the '476 patent, the proof required to prevail in a patent infringement claim with regard to the '476 patent, and the general pleading requirements to allege a patent infringement claim. (*Id.* at 78.)

Counsel also independently reviewed the '476 patent and discussed it with Kluna, who told him that it was imprinted on Plaintiff's marketing materials. (*Id.* at 73.) Notably, however, Counsel neither retained intellectual property counsel nor obtained the '476 patent prosecution history prior to filing Plaintiff's patent infringement claim. (*Id.* at 13.) While the Sanction Parties assert that they had no reason to believe that the '476 patent was invalid, it appears that none of the Sanction Parties took any steps to verify its validity prior to filing the patent infringement claim.

---

[4] At the time, Plaintiff's expert disclosure deadline was June 30, 2011.

On July 28, 2011, Counsel received Dr. Benedict's report stating his "preliminary opinion" that the '476 patent was likely being infringed. (*Id.* at 70.) On July 29, 2011, the last day of the extended deadline to amend pleadings, Counsel moved for leave to file Plaintiff's Third Amended Complaint alleging a patent infringement claim.[5] (Doc. 47.)

It was not until September 7, 2011, that Plaintiff retained local counsel specializing in intellectual property ("IP") litigation. (Doc. 77 at 74.) The very next day, on September 8, 2011, Counsel was notified by its newly retained local counsel that the '476 patent had been surrendered and reissued. (*Id.*) Because IP counsel discovered the invalidity of the '476 patent just one day after being retained, it appears evident that verifying the validity of a patent is one of the first steps experienced IP counsel take before pursuing a patent infringement claim. Further, it appears such verification is a quick, simple, and readily achievable task.[6] Counsel then informed Plaintiff of the significance of the reissue patent. (*Id.* at 83.)

In its jurisdictional brief, filed on September 16, 2011, Defendants alleged that the '476 patent was invalid because of the reissue proceeding. (Doc. 63 at 10-14.) Plaintiff subsequently attempted to withdraw its patent infringement claim, citing "reconsideration of its trial strategy," rather than responding to Defendants' assertion

---

[5] Plaintiff's motion was granted on August 19, 2011. (Doc. 51.)

[6] Indeed, it can be achieved by a free online search of the USPTO website. *See* United States Patent and Trademark Office, http://www.uspto.gov (last visited Nov. 9, 2011). However, the searching party must realize the significance of a reissue patent.

that the '476 patent was invalid.[7]  (Doc. 65 at 2.)  However, Plaintiff's motion for leave to file a Fourth Amended Complaint was denied.  (Doc. 70.)

## IV.  Analysis

### A.    Plaintiff

#### 1.    Rule 11

Plaintiff may be sanctioned under Rule 11 if: (1) it was an offending party; that is, it made factual misrepresentations in the pleadings  or was the "mastermind" of the frivolous claim, and (2) its conduct was taken in subjective bad faith or was "akin to contempt"; that is, it knowingly made false statements or exhibited "deliberate indifference to obvious facts."  *See McDonald*, 391 F. App'x at 853; *Barash*, 585 F. Supp. 2d at 1363; *Hodge*, 2010 WL 376019 at *4.

In the instant case, it appears that neither of the above standards is met. Addressing the second prong first, it appears Plaintiff did not act with subjective bad faith.  Rather, it appears that Plaintiff, acting through its COO, believed the '476 patent to be valid.  A closer question is whether Plaintiff exhibited "deliberate indifference to obvious facts."  However, the Court cannot conclude that the invalidity of the patent as a result of a reissue proceeding would be obvious to a layperson.

The circumstances surrounding Plaintiff's abrupt change in ownership while the reissue application was pending, along with the lack of legal knowledge

---

[7] Plaintiff has since conceded that the '476 patent was in fact invalid and unenforceable pursuant to 35 U.S.C. § 251.  (Doc. 88 at 2.)

18

regarding patents possessed by Kluna, lead the Court to conclude that Plaintiff did not exhibit deliberate indifference to obvious facts. Specifically, because Rene was forced out of the company without having communicated to anyone that the '476 patent had been surrendered in a reissue proceeding, and because Kluna did not appreciate the significance of the reissue patent when it was received sometime later, the fact that the '476 patent was no longer valid was not obvious to Plaintiff. Had ownership and management not changed over in such a fashion, the Court's analysis might be quite different.

Furthermore, Plaintiff's practices of marking its products with the '476 patent number and distributing marketing materials using the same number support Kluna's assertion that Plaintiff believed the '476 patent was the sole current and valid patent. Although Kluna eventually learned of the reissue patent, his lack of knowledge regarding patent law led him to mistakenly believe that the reissue patent was merely an amendment to the '476 patent and had no legal significance of its own. Although it may have been negligent for Kluna not to investigate further, it was not, in the undersigned's judgment, bad faith or deliberate indifference to obvious facts. The law is clear that mere negligence or ignorance of the facts or law, without more, is not sufficient to sustain sanctions under Rule 11 when the sanction proceedings are initiated *sua sponte*. *Hodge*, 2010 WL 376019 at *5.

Regarding the first prong stated above, for these same reasons, the Court cannot conclude that Plaintiff was the "mastermind" behind a frivolous claim. Plaintiff

19

acted without bad faith or deliberate indifference, and thus cannot be said to have "masterminded" the claim. Also, Plaintiff did not knowingly cause false statements in the pleadings to be made because, at most, it acted negligently. Thus, the Court recommends against Rule 11 sanctions regarding Plaintiff.

## 2. Court's Inherent Power

Plaintiff may also be sanctioned under the Court's inherent power if it acted in bad faith, vexatiously, wantonly, fraudulently, for oppressive reasons, or has otherwise defiled the "very temple of justice." Assuming *arguendo* that it was negligent for Plaintiff to fail to further investigate the validity of its own patent, such failure, in the undersigned's view, does not rise to the level of egregiousness required to sanction a party under the Court's inherent authority. Thus, the undersigned recommends that Plaintiff not be sanctioned under the Court's inherent authority.

## B. Counsel

### 1. Rule 11

Counsel may be sanctioned under Rule 11 if he knowingly made false statements or exhibited deliberate indifference to obvious facts. *See Hodge*, 2010 WL 376019 at *4. The Court is satisfied that Counsel did not knowingly make false statements. A closer question is whether he exhibited "deliberate indifference to obvious facts." However, the undersigned does not believe that standard is met either.

First, even assuming the invalidity of the '476 patent was obvious, which the Court will discuss further, it cannot be said that Counsel was deliberately indifferent to that fact. Counsel relied on Plaintiff's information that the '476 patent was not only valid, but was the only patent possessed by Plaintiff; that Plaintiff's products and marketing information all contained the '476 patent number; and that a previous settlement involved infringement of only the '476 patent. In addition, Counsel did at least consult a registered patent attorney who was formerly retained by Plaintiff. He also reviewed the '476 patent claims, and hired an expert to review those claims and compare the accused devices to such claims, as is required in patent infringement actions. It is clear that Counsel proceeded under the mistaken assumption that the '476 patent was valid. Although this mistake was likely negligent, the undersigned does not believe it equates to deliberate indifference.

Moreover, the undersigned cannot conclude that the invalidity of the '476 patent was obvious to a non-patent attorney in these circumstances. Although very little effort and research would have been required to discover that a reissue patent existed, and it was likely negligent not to ensure that a knowledgeable attorney conducted that research, the negligent failure to discover a fact does not make the fact obvious. Although the invalidity of the '476 patent may have been obvious to a patent attorney conducting a minimal investigation, the Court cannot conclude it was obvious to Counsel. Thus, the undersigned does not recommend sanctions against Counsel under Rule 11.

### 2.    28 U.S.C. § 1927

Counsel may be sanctioned under § 1927 if he knowingly or recklessly pursued a frivolous claim.  *See Amlong & Amlong*, 500 F.3d at 1239; *Bettis*, 2009 WL 5206192 at *6.  The Court is satisfied that Counsel did not knowingly pursue a frivolous claim.  However, the question of whether he recklessly pursued such a claim is a closer one, and likely one upon which courts may disagree.  Against the backdrop of Counsel's apparent dilatory conduct in hiring an expert and pleading the claim, it appears Counsel had little time to file and fully investigate the claim.  This self-imposed time crunch likely resulted in the failure to hire IP counsel before the claim was filed.  Thus, the claim was insufficiently investigated.

Whether the failure to ensure the validity of the patent in these circumstances amounts to recklessness is a judgment call about which courts may disagree.  Put another way, the question is whether Counsel's "conduct sunk so far beneath a reasonable standard of competence, much deeper than mere negligence, that it became essentially indistinguishable from bad faith."  *Cordoba*, 419 F.3d at 1178.  Whether this standard is satisfied is a matter of degree.  The undersigned ultimately concludes that, considering the facts as presented by the client, and considering the steps Counsel did undertake to investigate the claim, his conduct did not sink to this depth.

Counsel was almost certainly negligent in failing to investigate the validity of the '476 patent.  Not only is the required information free and readily accessible to

the general public online, but the process of determining the validity of a patent, is also relatively simple and takes only a matter of minutes. However, one must likely have some basic knowledge of patent law in order to know what to look for and appreciate the consequences thereof. The fact that experienced IP counsel discovered the invalidity of the '476 patent just one day after being retained suggests that verifying the validity of a patent, even when there is no reason to believe the patent may be invalid, is standard practice in patent infringement cases.

Thus, a reasonable standard of competence would appear to require an attorney to check the prosecution history of a patent in order to ensure its validity before filing a patent infringement claim. However, the issue is whether the conduct of Counsel fell far below this standard. In determining this issue, the Court has considered the following factors. First, since Counsel is not a patent attorney, his failure to verify the patent's validity seems more attributable to a lack of knowledge than bad faith. However, he admittedly should have hired IP Counsel prior to filing the claim. His failure to do so appears to have resulted at least in part from his failure to diligently pursue the claim. It appears he was dilatory both in hiring an expert and evaluating the claim. Although Counsel had nine months to do so, he waited until just fifteen days prior to the expert disclosure deadline to hire an expert, and waited until the day of the deadline to amend the complaint to assert the subject claim. In these circumstances, it is not surprising that something elementary and important was missed.

However, in Counsel's favor, he relied on his client's assertions that not only was the '476 patent valid, but also that it was the only patent possessed by Plaintiff. Moreover, the '476 patent number was on Plaintiff's products and marketing materials. That patent was also the subject of a prior settlement. Counsel also did consult with a patent attorney, review the patent, and obtain an expert opinion of likely infringement.

After review of Counsel's conduct in the circumstances presented, the undersigned cannot conclude that Counsel's conduct was tantamount to bad faith or rose to the level of recklessness.[8] However, since the question is a matter of degree, the Court may ultimately conclude otherwise. There is no question that Counsel's conduct needlessly and wastefully multiplied the proceedings. If sanctions are to be imposed, there must be a financial nexus between the sanctions and the excess proceedings. Thus, the Court will need to conduct further proceedings to determine "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Court might also wish to give the parties an opportunity to agree on an appropriate amount.[9]

---

[8] A separate issue is whether the '476 patent infringement claim is in fact frivolous. In its Response, Plaintiff still maintains that it simply referred to the wrong patent number in its complaint, and therefore implies that a potentially meritorious infringement claim on the reissue patent exists. Although the Court acknowledges this argument, there is no doubt that the '476 patent infringement claim is frivolous. Nevertheless, the Court has weighed this argument as a factor in its recommendation that no sanctions be issued.

[9] The undersigned recommends that if any sanctions are imposed, they should be issued only against the lead attorney, James D. Rosenblatt, and not his associate attorney, Chessa L. Akins.

### 3. Court's Inherent Power

Because the Court's authority to issue sanctions under its inherent power is no broader than its authority to issue sanctions under § 1927, the undersigned recommends that sanctions not be issued pursuant to the Court's inherent power in the instant case for the reasons previously discussed in connection with § 1927.

### C. Law Firm

#### 1. Rule 11

Absent exceptional circumstances, Law Firm must be held jointly responsible if Counsel is sanctioned pursuant to Rule 11. FED. R. CIV. P. 11(c)(1). Because the Court recommends that sanctions not be issued against Counsel under Rule 11, the Court also recommends that no sanctions be issued against Law Firm under Rule 11.

#### 2. 28 U.S.C. § 1927

Law Firm may also be sanctioned under § 1927 if the firm acted in bad faith; that is, its conduct was vexatious and multiplied the proceedings. *See Smith*, 193 F. App'x at 838-39. Because the Court recommends that sanctions not be issued against Counsel under § 1927, the Court also recommends that sanctions not be issued against Law Firm. In the event, however, that sanctions are issued against Counsel, Law Firm should also be sanctioned because it appears that lead counsel is a major principal in the four-attorney firm, "the Rosenblatt Law Firm."

### 3.  Court's Inherent Power

Finally, Law Firm may be held jointly and severally liable for any sanctions issued against Counsel pursuant to the Court's inherent power.  *See Maale*, 2011 WL 1458147 at *4.  Because the Court recommends that sanctions not be issued against Counsel pursuant to the Court's inherent power, the Court also recommends that sanctions not be issued against Law Firm on this basis.

### D.  Summary of Sanction Recommendations

In sum, the undersigned is not recommending sanctions against Plaintiff, Counsel, or Law Firm.  However, if sanctions are to be issued, the undersigned recommends that it be against Mr. Rosenblatt pursuant to § 1927 for the amount of excess costs, expenses, and fees reasonably incurred by Defendants as a result of defending the frivolous patent infringement claim.  The Court would need to conduct further proceedings to determine an appropriate amount, and may wish to give the parties an opportunity to confer and agree regarding this amount.  Furthermore, if sanctions are issued pursuant to § 1927 against Mr. Rosenblatt, the undersigned recommends that Law Firm be held jointly and severally liable with him.

Accordingly, it is respectfully **RECOMMENDED** that:

1.  **NO SANCTIONS BE ISSUED** against Plaintiff, Counsel, or Law Firm pursuant to Federal Rule of Civil Procedure 11, Title 28 U.S.C. § 1927, or the Court's inherent power.

2.     However, if sanctions are issued against Mr. Rosenblatt, he and his Law Firm should be held jointly and severally liable, pursuant to 28 U.S.C. § 1927, for the amount of excess costs, expenses, and fees reasonably incurred by Defendants as a result of defending the frivolous patent infringement claim.

**DONE AND ENTERED** at Jacksonville, Florida, on November 10, 2011.

_Joel B. Toomey_
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Roy B. Dalton, Jr.
United States District Judge

Counsel of Record