UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MOBILE SHELTER SYSTEMS USA, INC.,

       Plaintiff,

v.                           Case No. 3:10-cv-978-J-37JBT

GRATE PALLET SOLUTIONS, LLC,
and THOMAS R. BUCK,

       Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>[1]

    **THIS CAUSE** is before the Court on Defendants' Motion for Award of Attorneys' Fees and Costs ("Motion") (Doc. 117), Defendants' Motion for Award of Appellate Fees ("Appellate Fee Motion") (Doc. 146) (collectively, "Motions"), Plaintiff's respective Responses (Docs. 120 & 147), and the Joint Notice on Defendants' Motion for Attorney's Fees ("Notice") (Doc. 145). Defendants seek discrete fee awards under three different statutes. (Docs. 117 & 146.) The parties have agreed upon the proper amount of fees and costs to be awarded under each

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed.R.Civ.P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D.Fla.R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

statute, if the Court decides any such award is appropriate.  (Doc. 145 at 3.)

In the Motion, as modified by the Notice, Defendants seek $23,000 in fees and $177.60 in costs under Fla. Stat. § 542.335(1)(k), authorizing such awards to the prevailing party in suits to enforce restrictive covenants.  Defendants seek $50,000 under 35 U.S.C. § 285, authorizing fee awards "in exceptional cases" to the prevailing party in patent infringement claims.  Finally, Defendants seek $70,000 under 15 U.S.C. § 1117(a), also authorizing fee awards "in exceptional cases" to the prevailing party in Lanham Act claims.  (*Id.*)  In its Appellate Fee Motion, Defendants seek $17,437.50 for prevailing on Plaintiff's Lanham Act claim on appeal.[2]  (Doc. 144 at 3.)

For the reasons that follow, the undersigned respectfully recommends that the Court grant in part and deny in part the Motion and that the Court deny the Appellate Fee Motion.  It is recommended that the Court enter an award for Defendants under Fla. Stat. § 542.335(1)(k) and 35 U.S.C. § 285, but not under 15 U.S.C. § 1117(a).

## I.    Background

Defendants are the prevailing parties in this case pursuant to this Court's entry of final summary judgment in their favor (Docs. 113 & 116), and the Eleventh Circuit's affirmance of that judgment (Doc. 139).

Plaintiff Mobile Shelter Systems USA, Inc. ("Mobile Shelter") and Defendant

---

[2]    The Eleventh Circuit granted Defendants'/Appellees' motion to transfer consideration of appellate fees to this Court.  (Doc. 144.)

Grate Pallet Solutions, LLC ("Grate Pallet") manufacture shipping and storage systems for use by the United States military.  (Doc. 113 at 3.)  Defendant Thomas R. Buck ("Buck") operates Grate Pallet.  (*Id.*)  In 2010, purchasers within the military solicited bids for metal shipping and storage containers.  (*Id.* at 4.)  This solicitation indicated that the purchasers intended to buy the needed containers from Plaintiff, but invited other manufacturers to submit acceptable alternative offers.  (*Id.*)  Defendant Grate Pallet prepared a response to this invitation, called a "protest," and made an offer.  (*Id.*)  In response to this competing offer, Plaintiff brought this lawsuit.  (*Id.* at 5.)  The military ultimately did not award any contract in connection with this 2010 solicitation.  (*Id.*)

In general, Plaintiff's suit alleged that Defendants violated a preexisting settlement agreement ("Settlement Agreement") that Plaintiff had reached in 2004 with another container-building company, ITN/Grate Pallet, Inc. ("ITN"), in which Defendant Buck allegedly had an ownership interest.  (Doc. 52 at 3–6.)  Although Buck did not sign the Settlement Agreement, Plaintiff contended that this agreement prohibited Defendants from selling metal containers of the kind at issue in this litigation.  (*See id.* at 4–5.)  Plaintiff also alleged, *inter alia*, that Defendants infringed upon its patent and product trade dress, and committed several common law torts.  (*Id.* at 8–18.)

Specifically, Plaintiff's Third Amended Complaint ("TAC") (Doc. 52) contained seven counts.  In Count I, Plaintiff named Buck as a defendant and alleged common

3

law fraud.[3]   Plaintiff alleged that, although Buck did not sign the Settlement Agreement, he promised Plaintiff that he would abide by its terms and would stop producing products similar to Plaintiff's when he in fact had no intention of stopping. (Doc. 52 at 9.)   In Count II, Plaintiff sued both Defendants for violations of the Lanham Act.   Plaintiff alleged that Defendants copied the trade dress of one of its product lines.   (*Id.* at 10.)   In Counts III and IV, Plaintiff sued both Defendants for tortious interference with existing and prospective contractual relationships.   Plaintiff alleged that Defendants interfered with its impending contract by submitting a bid in response to the military purchasers' 2010 solicitation.   (*Id.* at 12–13.)

In Count V, Plaintiff sued Buck for breach of the Settlement Agreement, alleging that Buck was bound to this agreement as a shareholder/principal of ITN, and further because he was "acting as an agent for his father, James R. Buck [who did sign the Settlement Agreement], in forming Grate Pallet." (*Id.* at 14.)   Plaintiff further alleged that Buck breached a covenant not to compete in the Settlement Agreement.   (*Id.*)   Count VI, titled "Request for Permanent Injunctive Relief," asked the Court to require both Defendants to comply with the terms of the Settlement

---

[3]  Because of the confusing way in which the TAC was drafted, it is actually unclear which Defendants are party to which counts.   For example, although Count V, the breach of contract count, is purportedly only against Buck, Plaintiff requests in Count VI a permanent injunction against both Defendants to comply with the Settlement Agreement. As this Court held, Count VI is not even a proper count because it does not purport to state a claim; it only seeks a remedy. (Doc. 113 at 31 n.7.)   Adding to the confusion, Plaintiff did not reallege any prior allegations in any counts, so it is unclear which paragraphs apply to which counts.   Finally, other than in the improper Count VI and in Count VII (the patent infringement count), Plaintiff does not request any relief specifically as to any count. Rather, all the requested relief is jumbled together at the very end of the TAC.

Agreement.  (*Id.* at 14–17.)  Finally, in Count VII, which was belatedly added on July 29, 2011, the last day of the extended deadline to amend pleadings, Plaintiff sued Defendants for infringement of a certain patent (which was void and unenforceable because it had been surrendered in a reissue proceeding). (Docs. 47 & 51; *see also* Doc. 113 at 32.)

Pursuant to this Court's Order requiring the parties to confer further regarding the Motion (Doc. 141), the parties did so and filed the Notice  (Doc. 145).[4]  The parties were able to agree on the amount of fees and costs allocated among the several counts but they could not agree on the issue of entitlement as to any count.[5] Thus, they frame the issues for resolution as follows:

- Whether Defendants are entitled to an award of attorneys' fees and non-taxable costs pursuant to Fla. Stat. § 542.335(1)(k) for their defense of Counts I, V and VI;

- Whether Defendants are entitled to an award of attorneys' fees under 15 U.S.C. § 1117(a) for their defense of Count II, Trade Dress, in this Court;

- Whether Defendants are entitled to an award of attorneys' fees under 35 U.S.C. § 285 for their defense of Count VII, Patent Infringement.

(*Id.* at 3–4.)

---

[4]   The parties are to be commended for narrowing and clarifying the disputed issues.

[5]   Similarly, Defendants' Appellate Fee Motion certifies that although Plaintiff opposes Defendants' entitlement to a fee award, Plaintiff agrees that $17,437.50 is a reasonable amount.  (Doc. 146 at 3.)

## II.    Discussion

### A.    Florida Statute § 542.335(1)(k)

Florida Statute § 542.335(1)(k) provides for fee shifting in certain cases concerning restraints on trade.  The statute provides in relevant part:

> In the absence of a contractual provision authorizing an award of attorney's fees and costs to the prevailing party, a court may award attorney's fees and costs to the prevailing party in any action seeking enforcement of, or challenging the enforceability of, a restrictive covenant.

Fla. Stat. § 542.335(1)(k).

In interpreting this Florida law, this Court looks to the decisions of the Florida Supreme Court for guidance.  *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011).  If the Florida Supreme Court has not addressed an issue, this Court should generally follow the relevant decisions of Florida's intermediate appellate courts unless persuasive evidence demonstrates that the Florida Supreme Court would conclude otherwise.  *Id.*

Plaintiff appears to concede that Fla. Stat. § 542.335(1)(k) at least authorizes the Court to award Defendant Buck the fees and costs he incurred in defense of Count V, the breach of contract count, since that count plainly sought enforcement of the restrictive covenant contained in the Settlement Agreement.  (*See* Doc. 120 at 4 ("Recovery of fees under Fla. Stat. § 542.335(1)(k) applies only to the cause of action which was based on the enforcement of a restrictive covenant—breach of contract.").)  Plaintiff points out, however, that the award of fees under this statute

6

is discretionary.  (*Id.*)

Although the Court has discretion not to award fees and costs under this statute, the undersigned recommends that fees and costs be awarded for at least two reasons.  First, a review of Florida case law concerning this provision reveals that Florida's courts have not hesitated to enter such an award if authorized to do so. *See Puleo v. Morris*, 98 So. 3d 248, 250 (Fla. Dist. Ct. App. 2012) ("Appellees, having successfully challenged the enforceability of a restrictive covenant are *entitled* to attorney's fees." (emphasis added)); *Sun Group Enterprises, Inc. v. DeWitte*, 890 So. 2d 410, 412 (Fla. Dist. Ct. App. 2004) (granting a prevailing party attorneys' fees without discussion).  Second, an award is especially justified in light of the tenuous nature of the breach of contract count, in which Plaintiff sought to bind a non-signatory to a restrictive covenant despite a Florida statute specifically disallowing such a claim.  Florida Statute § 542.335(1)(a) provides, "A court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought."  As this Court held: "Plaintiff's attempt to circumvent this requirement is not well taken."  (Doc. 113 at 30.)

Thus, an award is clearly appropriate as to Count V under Fla. Stat. § 542.335(1)(k).  Since the parties have stipulated to the applicable fee and cost award under this statute, it appears not to matter whether this same amount of fees and costs are awarded as to both Defendants and as to Counts I and VI also.  (Doc. 145 at 3 ("Fla. Stat. § 542.335(1)(k): $23,000").)  However, to the extent there is any

7

such issue still in dispute, the undersigned recommends that an award to both Defendants as to all three counts would be appropriate, since those counts "involve a common core of facts and are based on related legal theories."  *Current Builders of Fla, Inc. v. First Sealord Sur., Inc.*,  984 So. 2d 526, 533–34 (Fla. Dist. Ct. App. 2008).  In short, the essence of all three counts is to hold both Defendants to the restrictive covenants in the Settlement Agreement, and thereby seek to enforce an anti-competitive agreement.

In *Current Builders*, the Florida Fourth District Court of Appeal held:

> In the event a party is entitled to an award of fees for only some of the claims involved in the litigation, *i.e.*, because a statute or contract authorizes fees for a particular claim but not others, the trial court must evaluate the relationship between the claims and where the claims involve a common core of facts and are based on related legal theories, a full fee may be awarded unless it can be shown that the attorneys spent a separate and distinct amount of time on counts as to which no attorneys' fees were sought or authorized.

984 So. 2d at 533–34 (internal quotations and alterations omitted); *see also Comprehensive Care Corp. v. Katzman*, Case No. 8:09-cv-1375-T-24TBM, 2011 WL 307706, at *5 (M.D. Fla. Jan. 28, 2011) (quoting same), *rev'd on other grounds*, 2013 WL 539114, at *1 (11th Cir. Feb. 14, 2013).

In Count I of the TAC, Plaintiff alleged that Defendant Buck committed common law fraud by stating that he agreed to be bound by a restrictive covenant contained in the Settlement Agreement while at the same time—

> suppress[ing] the truth by failing to disclose to [Plaintiff] Mobile Shelter his intention not to abide by the terms of the Settlement Agreement, but rather, to establish another company shortly thereafter with a

8

> substantially similar name and continue to produce, market, and sell products similar to Mobile Shelter.

(Doc. 52 at 9.)

Thus, Count I and Count V appear bound together through a common core of facts and related legal theories.  For example, although the elements of fraud and breach of contract obviously differ, these legal theories are related in this case because both seek to hold Buck to the Settlement Agreement.  This is made abundantly clear in Count VI, wherein Plaintiff seeks an injunction against both Defendants to make them comply with the Settlement Agreement.  Thus, to the extent there remains any dispute about whether the stipulated amounts of $23,000 for fees and $177.60 in costs should be awarded just to Buck for Count V or to both Defendants, for Counts I, V, and VI, the undersigned recommends the latter.

## B.    35 U.S.C. § 285

Although a close issue, the undersigned recommends that the Court award Defendants attorneys' fees under 35 U.S.C. § 285.

### 1.    Standard

Section 285 of Title 35 of the U.S. Code provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  Determining whether to award attorneys' fees to a prevailing party is a two-step process. *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1308 (Fed. Cir. 2012).  The Federal Circuit has described it thus:

First, a prevailing party must establish by clear and convincing evidence that the case is "exceptional." [*Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003).] An award of fees against a patentee can be made for a frivolous claim, inequitable conduct before the Patent and Trademark Office, or misconduct during litigation. *Beckman Instruments, Inc. v. LKB Produckter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989). Second, if the case is deemed exceptional, a court must determine whether an award of attorneys' fees is appropriate and, if so, the amount of the award. *Forest Labs.*, 339 F.3d at 1328. "[T]he amount of the attorney fees [awarded] depends on the extent to which the case is exceptional." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001).

*Id.*

Absent misconduct in the course of the litigation or in securing the patent, a court may impose sanctions against a patentee only if two separate criteria are satisfied: "(1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id.* (citing *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)). "'To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits.'" *Id.* at 1309 (quoting *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008)). Plaintiff's subjective bad faith is established if the prevailing party can show "that [the] lack of objective foundation for the claim 'was either known or so obvious that it should have been known' by the party asserting the claim." *Id.* (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).

The burden of showing that a case is exceptional rests upon the moving party. The showing must be made by clear and convincing evidence. *Id.* at 1308. Further,

with respect to the subjective bad faith inquiry, "there is a presumption that an assertion of infringement of a duly granted patent is made in good faith." *Id.* at 1309–10 (quoting *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010)).

## 2. Distinctions Between Standards for 35 U.S.C. § 285 and for Sanctions

In a Report and Recommendation dated November 10, 2011, the undersigned recommended against sanctioning either Plaintiff or its attorneys under Fed. R. Civ. P. 11(c)(3), 28 U.S.C. § 1927, and the Court's inherent power.  (Doc. 100.)  In adopting this Report and Recommendation, in conjunction with directing the entry of summary judgment in Defendants' favor, the Court stated:

> In view of the Court's determination that all of the claims brought by Plaintiff in this lawsuit are without merit (*see* Doc. No. 113), the Court is tempted to impose sanctions on Plaintiff and Plaintiff's counsel. The Court is mindful, however, that the conclusion of this lawsuit has repercussions apart from the award of sanctions, such as the barriers of issue and claim preclusion to future lawsuits, potential choses in actions that Defendants may bring against Plaintiff for asserting various claims in this lawsuit, and potential awards of attorney's fees in this case.  The Court also recognizes that this matter has consumed a substantial amount of judicial resources so far—resources which would continue to be expended if sanctions were imposed and appealed.  In the Court's view, this case has advanced to a point where judicial labor should end.

(Doc. 114 at 2.)  Despite the undersigned's recommendation that sanctions not be awarded based on the standards applicable to Rule 11(c)(3), 28 U.S.C. § 1927, and the Court's inherent authority, those standards differ from the standard for attorneys' fee awards under 35 U.S.C. § 285.

11

### a.    Fed. R. Civ. P. 11(c)(3)

For a court to award sanctions on its own initiative under Fed. R. Civ. P. 11, it must find that an offender's conduct is "'akin to contempt' or taken in subjective bad faith." *Hodge v. Orlando Utilities Com'n*, Case No. 6:09-cv-1059-Orl-19DAB, 2010 WL 376019, at *5 (M.D. Fla. Jan. 25, 2012).   This standard is satisfied when a party knowingly makes a false statement or "exhibit[s] deliberate indifference to obvious facts."  *Id.* (citing *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002)).

In *Highmark*, the Federal Circuit rejected the patentee's argument that the district court's "exceptional case" finding was inconsistent with its prior order vacating sanctions under Rule 11:

> A lack of sanctions against attorneys is not in itself a ground for barring sanctions against a client.  Rule 11 sanctions against an attorney may form a basis for an exceptional case finding.  But the absence of Rule 11 sanctions does not mandate the opposite conclusion.

687 F.3d at 1313 (internal citations omitted).

Therefore, the undersigned's recommendation that *sua sponte* Rule 11 sanctions not be awarded is not dispositive of the issue of attorneys' fees under 35 U.S.C. § 285.  Although a similar label of "bad faith" is used, Rule 11(c)(3) requires "deliberate indifference" to obvious facts while section 285 requires only that the party "should have known" obvious facts.

12

### b.      28 U.S.C. § 1927

Section 1927 of Title 28 of the U.S. Code allows a court to sanction attorneys who "multipl[y] the proceedings in any case unreasonably and vexatiously."  For an attorney's conduct to be unreasonable and vexatious within the meaning of the statute, it must be "so egregious that it is 'tantamount to bad faith.'"  *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).  Under this standard, "the attorney must *knowingly* or *recklessly* pursue a frivolous claim."  *Bettis v. Toys "R" Us*, Case No. 06-80334-CIV, 2009 WL 5206192, at *6 (S.D. Fla. Dec. 30, 2009) (quoting *Amlong & Amlong*, 500 F.3d at 1242 (emphasis in original)).  The attorney's conduct must have "sunk so far beneath a reasonable standard of competence, much deeper than mere negligence, that it became essentially indistinguishable from bad faith."  *Cardoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178 (11th Cir. 2005).

Thus, there are a number of distinctions between 28 U.S.C. § 1927 and 35 U.S.C. § 285.  First, section 285 of Title 35 allows for fees against a party.  Furthermore, courts analyzing the propriety of a fee award under this statute hold a party accountable for the conduct of its attorneys.  *See Highmark*, 687 F.3d at 1310–19 (failing to distinguish between the conduct of a party and its attorneys in analyzing a fee award under section 285, and holding that the absence of Rule 11 sanctions against attorneys does not prohibit an exceptional case finding).  Most importantly, while 28 U.S.C. § 1927 requires an attorney to act knowingly or

recklessly in multiplying the proceedings, *Bettis*, 2009 WL 5206192, at *6, section 285 requires "that the lack of objective foundation for the claim 'was either known or so obvious that it should have been known' by the party asserting the claim." *Highmark*, 687 F.3d at 1309 (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).

### c.     The Court's Inherent Authority

In the Eleventh Circuit, a district court's inherent authority to sanction an attorney is no broader than its authority under 28 U.S.C. § 1927. *See Bettis*, 2009 WL 5206192, at *7. Indeed, the standard for sanctions pursuant to a court's inherent authority may even be higher. Sanctions may be imposed against a party under a court's inherent power if a court finds that party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or if a court finds that "fraud has been practiced upon it, or that the very temple of justice as been defiled." *Barash v. Kates*, 585 F. Supp. 2d 1347, 1364 (S.D. Fla. 2006) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). Thus, for reasons similar to those regarding 28 U.S.C. § 1927, this standard is higher than that for a fee award under 35 U.S.C. § 285.

### 3.     Application of the 35 U.S.C. § 285 Standard

Preliminarily, although a suit on a properly issued patent is presumed to be brought in good faith, *Highmark*, 687 F.3d at 1309–10, that presumption would appear to have no applicability to a "dead patent." Alternatively, Plaintiff's failure to

14

check the continuing validity of this patent before filing suit overcomes this presumption.

There is clear and convincing evidence before the Court that Plaintiff's claim is objectively baseless.  As this Court held in granting summary judgment for Defendants, "there is no legal basis for Plaintiff's claims of patent infringement." (Doc. 113 at 32.)  Plaintiff sued Defendants for infringement of a patent that had previously been surrendered in a reissue proceeding.  (*See* Doc. 100 at 4–6.)  The law is well settled that a patent surrendered in a reissue proceeding is void and unenforceable.  As Defendants put it, it is a "dead patent."  (Doc. 117 at 7.)  *See Eby v. King*, 158 U.S. 366, 369 (1895); *Reedy v. Scott*, 90 U.S. 352, 364 (1874); *Pfizer, Inc. v. Apotex, Inc.*, 731 F. Supp. 2d 741, 747 (N.D. Ill. 2010); *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, Case No. 6:09-cv-1968-Orl-19KRS, 2010 WL 2136494, at *2 (M.D. Fla. May 27, 2010).  Thus, no reasonable litigant could have expected to prevail on this claim, and this criterion for an award of fees is satisfied.

Clear and convincing evidence also establishes that Plaintiff's conduct satisfies the subjective bad faith inquiry required under 35 U.S.C. § 285 because the invalidity of the dead patent was so obvious that Plaintiff should have known of it. All the information required was either in Plaintiff's possession or available through a free online search of the United States Patent and Trademark Office website, http://www.uspto.gov (last visited June 21, 2013).  (*See* Doc. 100 at 14–17.)  Indeed, when Plaintiff eventually retained local IP counsel to help it prosecute the patent

claim, IP counsel took one day to discover that the patent was invalid.  (Doc. 77 at 74.)

As the undersigned previously recognized in recommending against sanctions (Doc. 100 at 20–21), neither Plaintiff nor Plaintiff's non-IP lawyers may have thought to, or known how to, verify the validity of the patent at issue.   However, in determining the advisability of sanctions, the undersigned was required to analyze the conduct of Plaintiff separately from that of its lawyers.  (Doc. 100 at 18–26.) There is no such requirement here.  Furthermore, in recommending against attorney sanctions, the undersigned held Plaintiff's attorneys to the standard of a non-patent attorney.  (*Id.* at 21.)  Again, there is no such requirement here.  Plaintiff's attorneys should have refrained from bringing a claim whose merits they were not competent to evaluate.  Instead, Plaintiff filed first and investigated obvious and readily available facts later.  As a result of this unreasonable conduct, Defendants had to retain IP counsel to defend against a clearly meritless claim.  It would therefore be "grossly unjust, based on the baselessness of the suit" to require Defendants to bear their own fees.  *Highmark*, 687 F.3d at 1309 n.1.

Several courts have recognized that the filing of a frivolous patent claim without conducting a sufficient pre-filing investigation may make the case "exceptional" under 35 U.S.C. § 285.  *See Ultra-Temp Corp. v. Advanced Vacuum Systems, Inc.*, 189 F.R.D. 17, 21 (D. Mass 1999)  ("[T]he cases which deal with § 285 in the context of failure to perform an adequate pre-filing investigation find the

16

case is 'exceptional' not only because of that lack but also because the claim was frivolous or baseless."); *See also Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805 (Fed. Cir. 1990) (affirming a district court's finding that a case was "exceptional" because the plaintiff's claim was frivolous and the plaintiff failed to conduct an adequate pre-filing investigation); *Enpat, Inc. v. Microsoft Corp.*, 26 F. Supp. 2d 811, 814 (E.D. Va. 1998) ("Based on this record, we conclude that a reasonable pre-filing investigation should have alerted plaintiffs to the groundless nature of their claims against these products.  Accordingly, we find this to be an exceptional case justifying an award to defendants of the reasonable attorneys' fees they incurred in defending against the claims against these four products.").  Although these cases concern a plaintiff's failure to investigate the allegedly infringing nature of a potential defendant's products (and not the continuing validity of a sued-upon patent), *see, e.g.*, *Enpat, Inc.*, 26 F. Supp. 2d at 813, checking the validity of a patent is arguably more fundamental to a patent infringement claim and easier to accomplish.

If the Court adopts the undersigned's recommendation that the patent claim is an "exceptional case," the Court must decide whether to award fees, and if so, the amount.  For all of the reasons previously stated, the undersigned recommends that fees be awarded.  Further, the undersigned recommends that the Court accept the parties' agreement that $50,000 is an appropriate fee amount.  (Doc. 145 at 3.)

## C.    15 U.S.C. § 1117(a)

Section 1117(a) of Title 15 of the U.S. Code provides in relevant part: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  Although this language is identical to the patent attorney fee provision, the Eleventh Circuit has taken a narrow**er** view of what constitutes an "exceptional case" in the Lanham Act context than the Federal Circuit has taken with regard to patent litigation.  For example, in *Tire Kingdom v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (per curiam), the Eleventh Circuit noted:

> [A]n "exceptional case" [under the Lanham Act] is one that can be characterized as "malicious, fraudulent, deliberate, and willful," *Dieter v. B & H Indus. of S.W. Fla., Inc.*, 880 F.2d 322, 329 (11th Cir. 1989), or one in which "evidence of fraud or bad faith" exists, *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1169 (11th Cir. 1982).

Despite recognizing that other circuits have adopted a more lenient standard in the case of a prevailing defendant, the Eleventh Circuit has stated: "We believe that under *Safeway*, the correct standard in the Eleventh Circuit is fraud or bad faith." *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1320 (11th Cir. 2001).[6]  Defendants recognize this standard.  (Doc. 146 at 2.)

Here, although the Court held that Plaintiff failed to demonstrate a genuine issue of material fact with respect to the validity of its Lanham Act claim, there is

---

[6]   The court left the "determination as to the continuing validity of *Safeway* to another case." *Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1320 (11th Cir. 2001). To date, the Eleventh Circuit has not modified the *Safeway* standard.

scant, if any, evidence that Plaintiff brought this claim in bad faith. In support of their

entitlement to fees under 15 U.S.C. § 1117(a), Defendants combine Plaintiff's patent

and Lanham Act claims together and argue:

> Plaintiff's recklessness in bringing the patent infringement claim required Defendants to engage patent counsel and incur significant legal fees and expenses specific to that claim. Plaintiff's inability to articulate what features of its products were alleged to be trade dress as opposed to what features were functional, *i.e.* failure to allege or prove the prima facie elements of a trade dress claim, required Defendants to defend a Lanham Act claim without any merit from the onset of this litigation.

(Doc. 117 at 7.)

Although the undersigned is sympathetic to Defendants' arguments, and

agrees with Defendants that they were required to defend a Lanham Act claim with

very little, if any, merit, the undersigned finds no evidence of fraud or bad faith in

connection with this claim. The Eleventh Circuit appears to require more than just

"an obviously weak Lanham Act claim" to support a finding of bad faith. *See*

*Welding Servcs., Inc. v. Forman*, 301 F. App'x 862, at *1 (11th Cir. Dec. 2, 2008)

(per curiam) ("[W]e have held that an award of attorney's fees to a prevailing

defendant may be justified when a plaintiff has brought an obviously weak Lanham

Act claim and *the evidence shows that the plaintiff acted in bad faith and with an*

*improper motive*." (emphasis added)). Furthermore, although the undersigned is

recommending that the "dead patent" claim was brought in bad faith, the two claims

are separate enough that such finding does not equate to, or even substantially

support, a finding of bad faith as to the Lanham Act claim. Therefore, the

19

undersigned recommends that the Court deny the Motion with respect to fees under 15 U.S.C. § 1117(a), and deny Defendants' Appellate Fee Motion in its entirety.

Accordingly, it is respectfully **RECOMMENDED** that:

1.      Defendants' Motion (**Doc. 117**) be **GRANTED in part and DENIED in part** as follows:

a.      Defendants be awarded $23,000 in attorneys' fees and $177.60 in costs pursuant to Fla. Stat. § 542.335(1)(k);

b.      Defendants be awarded $50,000 in attorneys' fees pursuant to 35 U.S.C. § 285;

c.      Defendants *not* be awarded fees pursuant to 15 U.S.C. § 1117(a).

d.      The Clerk be directed to enter judgment in favor of Defendants Grate Pallet Solutions, LLC, and Thomas R. Buck, against Plaintiff Mobile Shelter Systems USA, Inc., in the total sum of $73,177.60, plus post-judgment interest at the rate provided by 28 U.S.C. § 1961, and close the file.

2.      Defendants' Appellate Fee Motion (**Doc. 146**) be **DENIED**.

3.      If this Report and Recommendation is adopted, Plaintiff have 90 days from such Order to pay the award pursuant to the parties' agreement.  (Doc. 145 at 3.)

**DONE AND ENTERED** at Jacksonville, Florida, on June 28, 2013.


JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Roy B. Dalton, Jr.
United States District Judge

Counsel of Record

21